IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,      )
                Plaintiff,     )
                               )
                               )
v.                             )Case No. 98-10025
                               )
                               )
GARY M. PELOZA,                )
                Defendant,     )
_____)

TRANSCRIPT OF SUPERVISED RELEASE VIOLATION HEARING

PROCEEDINGS had on the 21st day of February, 2007, in the above-entitled and numbered cause before The HONORABLE WESLEY BROWN, United States District Judge for the District of Kansas, Sitting in Wichita.

APPEARANCES

The United States of America appeared by and through Mr. Lanny Welch.

The Defendant appeared in person and pro se.

Kayla Watson, CSR

EXAMINATION INDEX

ROY DAY

    DIRECT BY MR. WELCH. . . . . . . . . .
    CROSS BY THE DEFENDANT . . . . . . . .    19

THE COURT:  Call your case, Ms. Clerk.

THE CLERK:  In the United States District Court for the District of Kansas, this is Criminal Case Number 98-10025, Defendant 2, United States of America versus Gary M. Peloza.  Today is February 21, 2007.  The case comes on today for a supervised release violation hearing.

THE COURT:  Is the United States ready, Mr. Welch?

MR. WELCH:  Yes, Your Honor.

THE COURT:  Mr. Peloza, are you ready to proceed?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Peloza, you've handed my clerk three documents.  I don't think they've been presented to the Government.  Will you show them to the Government?  Those are similar documents that we had before.

MR. WELCH:  Thank you, Judge.

THE COURT:  Mr. Peloza, I have these documents.  First, I need to go over with you the question of your wanting to represent yourself in this case.  Are you continuing in your refusal of having an appointment of counsel to assist you in this case?

Kayla Watson, CSR

THE DEFENDANT:  For and on the record, sir, I am here of the attorney in fact and secured party creditor of record by special visitation only and not by a general appearance as plaintiff in this matter.

THE COURT:  Well, on that position the Court denies it, and I ask you again, do you want an attorney to assist you in this matter?

THE DEFENDANT:  Sir, I don't need an attorney, sir.

THE COURT:  Do you want someone so you can consult with them?

THE DEFENDANT:  No, sir.

THE COURT:  Then I have to advise you that your waiver of a right to counsel -- you have a constitutional right to be represented in this proceeding by an attorney.  If you cannot afford an attorney the Court will appoint one for you at no cost to you.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  And do you understand your right to an attorney?

THE DEFENDANT:  Yes, sir.

THE COURT:  Can you afford to hire an attorney?

Kayla Watson, CSR

THE DEFENDANT:  Sir, I don't need an attorney.

THE COURT:  I said can you afford to hire an attorney?

THE DEFENDANT:  No, sir, I cannot.

THE COURT:  Do you want the Court to appoint an attorney to represent you?

THE DEFENDANT:  No, sir.

THE COURT:  Well, you also have the right to represent yourself if you wish.  But the Court must make sure that any decision to do so on your part is knowning and voluntary.  So, I have to ask you some questions.  These have been asked to you before.  Have you ever studied law?

THE DEFENDANT:  Yes, sir.

THE COURT:  What?

THE DEFENDANT:  Yes, sir.

THE COURT:  Where?

THE DEFENDANT:  On my own personal time.

THE COURT:  But --

THE DEFENDANT:   I went Ramell (ph. sp.) School of Law.

THE COURT:  Where is that located?

THE DEFENDANT:  In Illinois.

THE COURT:  Where?

THE DEFENDANT:  In Illinois.

THE COURT:  Where in Illinois?

THE DEFENDANT:  It's been a long time, sir.  I don't know where in Illinois.

THE COURT:  I see.  Have you ever represented yourself in a criminal proceeding?

THE DEFENDANT:  Yes, sir, I have.

THE COURT:  That's this proceeding?

THE DEFENDANT:  No, there's other proceedings, as a witness in the PSI in this case, and I've represented myself in other cases.

THE COURT:  You understand you're charged with violating the conditions of supervised release that were imposed upon you by the Court when you were sentenced in 1999?

THE DEFENDANT:  I understand I hadn't received a copy of the charges which I right now give the Court notice that I conditionally accept upon proof of claim.

THE COURT:  Well, do you understand that the purpose of the hearing today is to determine whether you violated the conditions of release and to impose a sentence if the Court finds you have violated the conditions?

THE DEFENDANT:  Yes, sir.

Kayla Watson, CSR

THE COURT:  And you understand if I find you in volation of the conditions of supervised release, I could sentence you today to as much as five years imprisonment?

THE DEFENDANT:  I understand everything, sir.  I don't agree to the proceedings because --

THE COURT:  I understand that.  I just want to know what you understand.

THE DEFENDANT:  There's a lot of things I understand, sir, but I don't agree to.

THE COURT:  I'm sure that's true.  Do you understand that the proceedings will be governed by the Federal Rules of Criminal Procedure?

THE DEFENDANT:  I'll conditionally accept upon proof of claim, sir.

THE COURT:  And do you understand if you represent yourself you are on your own as the Court will not be able to help or you or advise you as to how to proceed with your case?

THE DEFENDANT:  I totally understand, but I conditionally accept these things until proof of claim.

THE COURT:  And you understand that even if you do not fully understand the Federal Rules of Procedure, the rules of evidence that apply here,

Kayla Watson, CSR

you will be bound by them?

THE DEFENDANT:  Sir, the Court has received notice of record that the law form that we're under right now is under the Uniform Commercial Code, and commercial law.  There is nothing in the record since then that has changed that senario.

THE COURT:  Then in view of your statements there is no basis for your contention in this case.

THE DEFENDANT:  Sir, I have a registered --

THE COURT:  What?

THE DEFENDANT:  For and on the record, sir, I have a registered perfected claim in the record which is filed with the State of Kansas which shows my superior claim in this matter here.  There has been tresspass against my secured collateral by seizure, and a damage has occured.

This Court has my registered, perfected claim in record along with my bond.  And being the creditor, I'm also the plaintiff and I seek remedy.  Since I have filed my registered, perfected claim and bonds into this Court's record and since this Court's record is barren of any lawful and valid

Kayla Watson, CSR

claim and bond filed by the US Attorney which relief and remedy can be granted to, a damage has resulted from a false arrest and imprisonment of my registered, secured collateral for the past 13 days.

And in light of the Eleventh Circuit case of Tresident versus the City of Tampa where in that ruling the Court set precedence by awarding plaintiff $25,000.00 for 23 minutes of false arrest and imprisonment which amounts to 1.56 million dollars a day and in the incident matter here that amounts to 19.28 million dollars.

I will be seeking remedy for damages in the incident cause in the amount of only $5 million dollars since the United States has failed to bond the incident action to cover the cost of the award. The Court file will find it does contain an indemnity bond to cover to United States of America and this District Court to be able to make available the award the damaged party is seeking who is the secured party creditor of record and also plaintiff here.

Is the United States in agreement with this?

THE COURT:  Mr. Welch, you have a comment?

Kayla Watson, CSR

MR. WELCH:  No, Your Honor.

THE DEFENDANT:  Sir, since the Government had a duty to speak and did not speak it is now in default and I'm asking for foreclosure proceedings or remedy.  I seek remedy.

THE COURT:  The Court finds that your contest of these proceedings and your efforts to proceed are utterly beyond any defense.

THE DEFENDANT:  Sir, I'm running strictly by the Uniform Commercial Code that this Court is operating under right now.

THE COURT:  This is not a case involving the Commercial Code.

THE DEFENDANT:  Sir, the United States is a federal corporation and you are trying to conduct business.

THE COURT:  That is not true.

THE DEFENDANT:  Under Title 28, Section 3000, Exhibit 15-8, it states that the United States is a federal corporation and you're trying to conduct business.  You have seized my property which I have superior claim to and I seek remedy, sir.

THE COURT:  And that is denied.

THE DEFENDANT:  I conditionally accept your dishonor, sir, upon proof of claim.

Kayla Watson, CSR

THE COURT:  All right.  Then this gets back to the fact about your refusal to accept an attorney to assist you in this matter.

I find that the defendant has knowingly and voluntarily waived his right to counsel and has knowingly and voluntarily elected to represent himself in these proceedings.

Now we'll get down to the violations which we have on the sentence that you received and I'll put in the record the violations which are alleged and which are before me.

On October 27th, 1998, the defendant, Gary Peloza, pleaded guilty to Count 2 of an indictment charging him with unlawful possession with intent to distribute ten ounces of a mixture containing methamphedamine.

On January 29th, 1999, the Court sentenced Mr. Peloza to 120 months in prison to be followed by five years of supervised release.

On February 2, 2007, Mr. Peloza was released from custody to begin his term of supervised release.

The matter is now before the Court on a violation report from the probation office alleging that the defendant has violated the terms of

Kayla Watson, CSR

supervised release by refusing to submit a urine sample as directed by the probation office, by refusing to participant in a substance abuse treatment program as directed by the probation office.

The report alleges that when Mr. Peloza reported to the probation office, he refused to sign an Acknowledgement of the Conditions of Supervision stating that he did not wish to purchase the services. He stated that he was under no obligation to abide by the conditions.

The report also alleges that Mr. Peloza refused to answer questions about his drug history, refused to sign a release for a substance abuse treatment program, and refused to submit to urine samples stating that he had no intention of participating in any programs offered by the probation office or complying with the terms of supervisions.

I'll be glad to hear the Government's evidence in this matter.

MR. WELCH: Your Honor, the Government calls Roy Day.

THE COURT:  Mr. Day, come forward and be sworn.

Kayla Watson, CSR

ROY DAY,

having been first duly sworn, was

examined and testified as follows:

DIRECT EXAMINATION

BY MR. WELCH.

Q.    Sir, could you state your name?

A.    Roy Day.

Q.    Mr. Day, how are you employed?

A.    I'm employed as a probation officer with the United States District Court for the Dictrict of Kansas.

Q.    During your employment as a United States probation officer in Wichita, Kansas, have you had the opportunity to meet with a Gary M. Peloza?

A.    I have.

Q.    Do you see him in the courtroom today?

A.    He's seated at the defense table in an orange jumpsuit.

            MR. WELCH:  Your Honor, I'd ask the record to reflect that Mr. Day has identified the defendant, Mr. Peloza.

            THE COURT:  Yes, he's been identified.

BY MR. WELCH:

Q.    Mr. Day, what was the purpose of meeting with Mr. Peloza?

A.    The purpose was to go over his conditions of

supervised release subsequent to his release from prison.

Q. And where did that meeting take place?

A. It occured in my office on the third floor of the US Courthouse.

Q. What is was the date of that meeting?

A. February 5th, 2007.

Q. During the meeting that you had with Mr. Peloza, did you explain to him the conditions of his supervised release?

A. I did.  I read them verbatim.

Q. Where they on a piece of paper or several pages?

A. They were on a piece of paper, front and back, with signature lines at the bottom on the back of the paper.

Q. And you read these conditions aloud to Mr. Peloza?

A. Yes.

Q. At some point did you ask him to acknowledge he understood those conditions?

A. I did.

Q. How did you do that?

A. I read the acknowledgment of conditions at the bottom of the reverse page and asked him to acknowledge the conditions.

Q. Did you ask him to sign the form?

Kayla Watson, CSR

A.    I asked him if he was willing to sign the form.

Q.    And did he indicate to you he was willing to do so?

A.    No.

Q.    Did he indicate to you why we was unwilling to sign the form?

A.    He stated he was under -- if I recall correctly -- he stated he was under no obligation to accept the offer that was put forth by the US Probation Office and, in fact, wrote "offer rejected" on the signature line.

Q.    Given the statement made by Mr. Peloza that he refused the offer -- did I say that correctly?

A.    Yes.

Q.    Did you understand him to indicate to you that he refused to abide by the conditions of supervised release?

A.    Yes, as a matter of fact, later in the interview I asked him if he had any intentions of following the supervised release and he again stated that he was under no obligation and did not intend to follow the conditions.

Q.    One of the conditions of supervised release was that Mr. Peloza was required to submit to random drug urinalysis -- drug and alcohol urinalysis?

A.    Uh-huh.

Kayla Watson, CSR

Q.    Is the answer yes?

A.    Yes.  I'm sorry.

Q.    Did you ask him the day that you met with him to submit a sample to you?

A.    I did.

Q.    What was his response?

A.    He stated that his client presented the information -- he was acting as Gary Michael, attorney in fact -- stated his client presented the information necessary to the probation office in the form of a Bureau of Prison's ID card, and an indentification paper and told me if I could squeeze the urine out of those two documents, I could have a sample; otherwise, he refused to submit the sample.

Q.    Did you understand his statement as a refusal to submit a sample to you that day?

A.    I did.

Q.    Did you also present to Mr. Peloza a responsibilities form?

A.    A Client Responsibilities Form which is a statement of client's responsibility in a drug and alcohol treatment program pursuant to his conditions.  One of the conditions of supervision -- special conditions, stated he is to participate in a drug and alcohol treatment program as directed by the US

Kayla Watson, CSR

Probation Office.  I presented that form to him and, again, he signed the form "offer rejected," and stated what I said earlier, that he was under no obligation and rejected our offer of services.

Q.    And did you identify a specific program that he was to participate in?

A.    Options Adult Services.

Q.    And did the defendant refuse to participate in that program?

A.    Yes.

Q.    Mr. Day, I believe you testified already at the conclusion of your meeting or toward the end of your meeting with Mr. Peloza you specifically asked him if he intended to comply with any conditions of supervision, didn't you?

A.    Yes.

Q.    What was his response to that?

A.    I wrote it in the violation report.  Do you mind if I refer to that?

Q.    Please do.

A.    The defendant refused to submit the samples and comply with conditions.  He stated that he has no intention of participating in any programs offered by the US Probation Office or complying with the terms of supervised release.

Q.    Based on his answers and his comments that day did you tell Mr. Peloza that you did consider his answers and his conduct to be a refusal to comply with the conditions of supervised release?

A.    Yes.

Q.    And did you also tell Mr. Peloza you would advise the Court of his refusal?

A.    Yes.

Q.    Did he have a response to that?

A.    He said he wished for a summons and wanted to argue his case to a court.

MR. WELCH:  Your Honor, I don't have any other questions for Mr. Day.

THE COURT:  Do you have any questions for the witness, Mr. Peloza?

THE DEFENDANT:  For and on the record, sir, I want to -- for and on the record, sir, I want to give this opportunity to give judicial notice and notice to this Court that the name you have mentioned is registered name and copyrighted and that there's a five hundred thousand dollar user fee for each occurance and use of that name from this point on.  I also want to ask of this Court --

THE COURT:  I'm asking if you have any questions of this witness.

Kayla Watson, CSR

THE DEFENDANT:  Sir, jurisdiction hasn't been established in this court --

THE COURT:  I ask you if you have any questions of this witness.

THE DEFENDANT:  No, sir, I do not have any questions of this witness because the Court hasn't established jurisdiction --

THE COURT:  Just a minute please.  The witness is here for you to ask questions of.  Your other arguments are legal questions.  This is a factual question.  Do you have any questions about the facts that this witness is testifying to?

THE DEFENDANT:  I will ask him one question.

THE COURT:  All right.  Fine.

CROSS EXAMINATION

BY THE DEFENDANT:

Q.    Mr. Day,  didn't the attorney -- since I am not Gary M. Peloza, I'm the attorney representing Gary M. Peloza, since Gary M. Peloza is a corporate entity just like the United States is a corporate entity and they both need representation, didn't the representative for Gary M. Peloza ask you to show a lawful and valid document which obligates Mr. Peloza to perform, such as a signed agreement to

conditions?

THE COURT:  What was the document?

THE DEFENDANT:  I'm asking about about the document -- a lawful and valid document --

THE COURT:  I just ask the question of the witness.

THE DEFENDANT:  Yes, oh, I thought you were asking me, sir.

THE COURT:  What?

THE DEFENDANT:  I thought you were talking to me.

THE COURT:  I'm ask you if you have a question of this witness?  You're arguing your case.  Do you have a question of this witness?

BY THE DEFENDANT:

Q.    Did the representative representing Gary M. Peloza ask you if there was a document that you had that obligated Gary M. Peloza to perform?

A.    That sounds familiar but I don't remember that specific question.

Q.    So you had nothing signed by the defendant or the defendant's representative obligating the defendant or his surety, the attorney of fact, to perform for your request?

A.    I had no papers signed by the defendant that refered

Kayla Watson, CSR

to the conditions.

Q.   Have you had any documents in your possession which obligates or demands that the defendant or the representative of that defendant sign documents?

A.   I have -- did the defendant sign documents?

Q.   Yeah.

A.   No.

Q.   Are you aware that to threaten or to use any type of threat to anybody to sign documents is a crime?

MR. WELCH:  Your Honor, I'm going to object.  This is irrelevant.  It assumes facts not in evidence.  There was never any threat made to Mr. Peloza that day.

THE COURT:  Sustained.

BY THE DEFENDANT:

Q.   Let me rephrase the question.  In what manner did you try to obtain this signature from the representative of Gary M. Peloza?

A.   In what manner?  I asked him to sign the document.

Q.   And doesn't he have free will to not volunteer to assist them?

A.   I suppose.

Q.   Are you aware that the judgment in which you are assuming obligates Gary M. Peloza to comply was the result of a plea agreement?

Kayla Watson, CSR

A.    That's my understanding.

Q.    Are you aware of that plea agreement at all?

A.    I know from the presentence investigation that there was a plea agreement.

THE DEFENDANT:  Can I have the witness look at a plea agreement please?

THE COURT:  If we have it here in front of us.

THE DEFENDANT:  I have one at my desk.

THE COURT:  You may hand it to him.  I now have a copy of it in front of me, too.  I don't know whether -- this was a signed copy of the plea agreement.  It was signed on file October 27, at 11:34 a.m., in 1998.

BY THE DEFENDANT:

Q.    I am going to ask your witness, the witness here, sir, if he sees anywhere in that document where the defendant or the representative of the defendant had agreed to any conditions of supervised release?

A.    It says nothing about conditions.

Q.    Let the record reflect Mr. Day, has not seen any agreed to conditions to that supervised release obligation that he is demanding on the defendant or his representive.  Are you aware that judgment is pursuant to that agreement?

A.    Are you speaking of the judgment --

Q.    The judgment that was given on January 20th of 1999 --

THE COURT:  I think the Court can take judicial notice of the records of this Court.  The record shows that the plea agreement was executed by you, Mr. Peloza, on 10/27/98, together with your attorney, Mr. Womac, Mr. Welch, and Michael Christiansen, the Assistant United States Attorney. That was done at that time and the plea agreement in the record of this Court in connection with that proceeding will be admitted as a part of these proceedings.

BY THE DEFENDANT:

Q.    So, what I just want to make clear is the probation officer is aware that the judgment in which he is trying to enforce on special conditions and conditions of supervised release was never agreed to in any plea agreement in which the judgment was made and pursuant thereof.  Are you now aware of that?

MR. WELCH:  To which I'll object as being irrelevant, Your Honor.

THE COURT:  It will be sustained.

THE DEFENDANT:  I have really no further questions.

Kayla Watson, CSR

THE COURT:  That will be fine.  You'll be excused.

THE WITNESS:  Thank you.

THE COURT:  Anything further of this witness?

MR. WELCH:  Not by the Government, Your Honor.

THE COURT:  You may step down.  The Court takes notice of the fact that the plea agreement was presented and are part of the records of this Court, also the petition to plead guilty which is part of the records of this Court.  They'll be made a part of this proceeding, copies of them, the records themselves.  Do you have any evidence you wish to present as to the facts of this case, Mr. Peloza?

THE DEFENDANT:  Sir, all the evidence is in the record.  And that's all.  The record speaks for itself.

THE COURT:  Fine.  That's fine.  The Court's findings in this case and proposed findings of facts and tenative sentence are as follows: Based on the evidence, the Court intends to find the defendant violated his supervised release and said term is revoked.

The Court also intends to make the following

Kayla Watson, CSR

findings and impose the following sentence:  The highest grade of violation is C; the Criminal History Category is B or 5; the policy statements are from seven to thirteen months.

The tenative sentence will be three years.

Supervised release:  The Court does not intend to impose a term of supervised release.

The justification for this sentence is as follows:  The Court has considered the nature and circumstances of these violations, the characteristics of the defendant, and sentencing objectives required by statute.

The Court has also considered the advisory nonbinding Chapter 7 policy statement issued by the sentencing commission pursuant to 28 USC 99-482.

The Court intends to find that revocation of supervised release is mandatory in this case pursuant to 18 USC 35-83(g)3.

The Court intends to revoke the defendant's supervised release and sentence him to 36 months in confinment.  Thirty-six months confinment exceeds the policy statement range of seven to thirteen months.

The defendant has demonstrated a blatant contempt and disregard of the order and authority of

Kayla Watson, CSR

this Court and the law.

The defendant has expressed a lack of willingness to accept and refuses to comply with the manditory and discresionary conditions of supervision -- supervised release imposed at sentencing.

The conditions are intended to facilitate the defendant's successful reintegration and contribute to the safety of the community.

Mr. Peloza has violated the conditions of supervised release.

The Court finds this pattern of conduct warrants a sentence to be above the policy range, specifically, thirty-six months in custody, and will serve as an adequate deterrant from further criminal conduct.

The Court intends to impose this sentence as a sanction for failing to abide by the conditions of the Court.

The Court finds that Mr. Peloza's lack of cooperation with the probation office demonstrates that continued supervision will serve no useful purpose.  Therefore, the Court does not intend to reimpose supervised release.

The Court finds the defendant is not an

appropriate canidate for voluntary surrender.

Do you have any other arguments you wish to make in objection to the sentence as to the jurisdiction of this Court?

THE DEFENDANT:  Yes, sir.  I would like -- for and on the record I would like Government to produce a lawful and valid document which obligates the defendant or the representive, myself, to conform to that obligation or that liability that was created by the document.

Let me rephrase that.  For and on the record let the US Prosecutor produce a lawful and valid contract in which the defendant or myself has signed which creates a liability and an obligation to perform to the conditions of supervised release.

Other than that, this Court has no jurisdiction because there is no contract in the Court that's been violated that serves this sentence or serves this proceeding.

The Court lacks jurisdiction for the lack of contract in the Court's record, a lack of a valid claim in this court of record, a lack of bond in this court of record and has no authority other than to dismiss this action with prejudice because there is no valid contract granting jurisdiction in this

matter.

THE COURT:  Your objection is denied.

THE DEFENDANT:  I accept your dishonor for value, sir.

THE COURT:  And the Court finds no argument that you've made to showing any reason why the imposition of sentence should not now be made.

The sentence is as follows:  Based upon the violation report, the evidence, the previously stated findings, the Court determines that Gary M. Peloza has violated the terms of supervised release as imposed on January 11, 1999, and that said term of supervised release is revoked.

It is the judgment of the Court that the defendant be sentenced to the custody of the Bureau of Prisons for 36 months.

Voluntary surrender is denied, and the defendant shall remain in the custody of the US Marshal Service pending the designation by the Bureau of Prisons.

Both the Government and the defendant are advised of their respective rights to appeal this sentence subject to the provisions of 18 USC 37-42.

Further, pursuant to Rule 32(j) the defendant has the right to appeal the sentence and if unable

Kayla Watson, CSR

to pay cost of appeal, the defendant may apply in forma pauperis.

And if the defendant so requests the Clerk of the Court will prepare and file a notice of appeal on the defendant's behalf.

That's the judgment and sentence of the Court.

The documents presented to the Court are found to be not relevant to this proceeding, but the clerk is directed to make these documents a part of the case file in the event of appeal.

Anything further?

MR. WELCH:  Not by the United States, Your Honor.

THE COURT:  Mr. Peloza?

THE DEFENDANT:  For and on the record, I want to let you have notice that I conditionally accept these proceedings upon proof of claim, and no claim has been made.

I will give notice of appeal.

You have been given notice there that on July 22nd, 2005, the US Attorney had received a private accomdation discharge bond which discharged the defendant from the judgment, and --

THE COURT:  You may file your notice of

appeal in this proceeding.  If you want the Clerk will file it for you.  File an affidavit, if you want to appeal, showing you cannot pay the appeal.  Upon reciept of that affidavit that you cannot afford the appeal, the Clerk will enter an appeal on your behalf.

The record of this proceeding and all proceedings in this case will, therefore, be before the Circuit Court of Appeals for their consideration of the ruling of this Court.

THE DEFENDANT:  I give my notice for that appeal at this time so that the Clerk can prepare an appeal.

THE COURT:  I've told you, you have the right to appeal.  You may do so if you follow the proceedings that are required; otherwise, your arguments and statements are without basis, without foundation.  The Court does have jurisdiction and has proceeding accordingly.

THE DEFENDANT:  Sir, the Court does not have jurisdiction.  I'm not going to accept these proceedings, consent to it, or authorize it.  They haven't proven jurisdiction.  It's not in the record.  You can't assume jurisdiction, sir, until it's proven.

Kayla Watson, CSR

THE COURT:  Mr. Peloza, this case shows adequate jurisdiction over the proceedings, over your conduct --

THE DEFENDANT:  You have to prove it, sir.

THE COURT:  -- and we're through talking about it.

THE DEFENDANT:  You have to prove jurisdiction, sir.  It cannot be assumed.

THE COURT:  We're through talking about it.

THE DEFENDANT:  I'll accept your dishonor for value, sir.

THE COURT:  You'll carry out the judgment of this Court.

MR. WELCH:  Thank you, Judge.

Kayla Watson, CSR

CERTIFICATE

I, Kayla Watson, CSR in and for the District of Kansas, do hereby certify:

That the above and foregoing proceedings were taken by me at said time and place in stenotype;

That thereafter said proceedings were transcribed by me and/or under my direction and supervision by means of computer-aided transcription, and that the above and foregoing constitutes a full, true and correct transcript of said proceedings;

That I am a disinterested person to the said action.

IN WITNESS WHEREOF, I hereto set my hand on this the 22nd day of August, 2007.


S\KAYLA WATSON
Kayla Watson
CSR


Kayla Watson, CSR